ALBANY,
Dec. 1832.

In the matter
of Negus.

## In the matter of Isaac Negus, junior, an absconding debtor.

A *writ of error* does not lie upon the refusal of the supreme court to set aside the decision of *trustees* under the statute relative to *absconding debtors*, upon an allegation of error in the adjustment of the demands due the creditors of the absconding debtor.

Negus having applied to the supreme court to set aside the decision of the *trustees* appointed in the matter of the proceeding against him, in respect to the amount awarded by the trustees to the *attaching creditor*, and the court after hearing the parties, *having denied his application*, see 7 *Wendell*, 499, *&c.*, sued out a writ of error to remove the proceedings into the court for the correction of errors. The writ was returned and filed on the 14th April, 1832 ; accompanying the writ was a schedule containing the affidavits and documents presented to the supreme court at the time of the application, but the rule or *order of the court denying the motion was not returned.* On the 23d April the attorney for Negus, without observing the omission, filed an assignment of errors, and on the next day the attorney for the creditor filed a joinder in error. The attorney for Negus now asked permission to withdraw the assignment and to issue a *certiorari* to bring up the rule or order of the supreme court, which had been omitted to be returned. At the same time a cross motion was made by the attorney for the creditor, that the writ of error be *quashed* or *dismissed* upon the ground that no writ of error will lie upon the matters contained in the return. The motions were brought on upon notices duly given.

*I. L. Wendell* asked leave to withdraw the assignment of errors, &c.

*A. Taber & B. F. Butler* moved that the writ of error be quashed. They insisted that the determination of the supreme court upon the appeal from the decision of the trustees was not the subject of review by this court ; that it is a well settled principle, that when a court of record acts in a *summa-*

ALBANY,
Dec. 1832.

In the matter
of Negus.

*ry manner*, or in a new course different from the common law, a writ of error does not lie. 1 *Salk.* 263. 1 *Ld. Raym.* 213, 252, 454. *Carth.* 494. *Comyn*, 80. They contended that the determination of the supreme court in this case was in the nature of an *interlocutory order;* that no judgment had been rendered by that court, and no record made of the proceedings there ; that at most, the determination complained of was a *rule* or *order* of the court, which, until enrolled, could not be considered as a record, and could not be brought up by writ of error, 6 *Taunt.* 19, 9 *Johns. R.* 287 ; that decisions on summary applications cannot be thrown into the shape of a record and become the subject of review in any other court, 14 *Johns. R.* 76 ; that a writ of error will not lie for the refusal of a court to *set aside an execution*, although the motion involves the rights of the parties ; and where such a motion was made and denied, and a writ of error subsequently sued out, it was said by Chancellor Kent that the rule or order of the supreme court denying the motion was not a *judgment* within the meaning of the constitution or of the statute organizing the court for the correction of errors ; it was only a decision upon a collateral or interlocutory point, and could not be distinguished from a variety of other special motions and orders made in the progress of a suit, and which he said had never been deemed the foundation of a writ of error. *Brooks* v. *Hunt*, 17 *Johns. R.* 486. At all events, a *record* should have been made up and filed in the court below. In the case of *Yates* v. *The People*, 6 *Johns. R.* 402, which was a writ of error upon the refusal of the supreme court to allow a *habeas corpus*, a record was made up ; and so also in the case of *Clason* v. *Shotwell*, 12 *Johns. R.* 31, where re-restitution was awarded by the supreme court in the case of an indictment for forcible entry and detainer, on affidavits without a return to a certiorari, the proceedings were reduced to the form of a record. The rules of court and the statutes regulating proceedings upon writs of error uniformly contemplate a record to exist, directing a transcript of the record to be made, &c. 2 *R. S.* 598, § 42. *id.* 618, § 34. Again ; the plaintiff in error might have presented his case in the form of a record, had he sued out a *certiorari* to the *trustees*, which he might have done, 2 *Caines*, 181,

ALBANY,
Dec. 1832.

In the matter
of Negus.

6 *Wendell*, 278, instead of applying to the supreme court di-
rect on motion.    They further insisted that where a new ju-
risdiction is created, not proceeding according to the course of
the common law, or when powers are conferred upon a court
of record authorizing proceedings summarily in a course dif-
ferent from the common law, a writ of error will not lie to re-
view the determination had, unless a record is authorized to
be made up or a writ of error expressly given ; and where a
writ of error is given in a particular case in such summary
proceedings, the legal intendment is that it will not lie in any
other case in respect to such proceedings ; and they argued
that inasmuch as a writ of error was given by statute where
an *absconding debtor* or his creditor presents a petition to pro-
cure the *discharge of a warrant* issued against such debtor, and
a determination is had upon such petition in the supreme court,
2 *R. S.* 602, § 67, the presumption was that the legislature did
not intend it should lie in any other, or provision would have
been made on the subject.

*I. L. Wendell,* for plaintiff in error.  The writ of error ought
not to be quashed.    The determination of the supreme court,
upon the application of the debtor to set aside the decision of
the trustees, was a *final determination* upon the rights of the
parties, and as such is as much the subject of review as the
judgment of that court in an action pending therein. It is the
privilege of a citizen in every case to appeal from the decision
of any tribunal *finally passing upon his rights* to the court of
the last resort, and that whether the determination complain-
ed of as erroneous be a *formal judgment* or an adjudication in
the nature of a judgment.   In the case of *Yates* v. *The People,*
6 *Johns. R.* 337, &c. which was a writ of error to the supreme
court for refusing to allow a *habeus corpus,* this principle was
fully settled.    In that case Chief Justice Spencer goes into a
full examination of the cases, and comes to the conclusion
that there is no rule existing at the common law that a writ
of error will lie only in cases where the judgment is technical-
ly *ideo consideratum est ;* but whether it be so or not, he con-
tended that the court for the correction of errors had a revis-
ionary power over all errors happening in the supreme court.

ALBANY,
Dec. 1832.

In the matter
of Negus.

Alluding to the statute organizing the court for the correction of errors, he says : " I do insist that whenever a decision takes place in the supreme court which is *final*, and of which a record can be made, and which shall decide the rights of property or personal liberty, the statute gives jurisdiction to this court." Clinton, senator, in the same case says : " A judgment is a decision of a court upon the case before it ; and the last or *final determination* of a tribunal is the proper subject for a writ of error." He also insists that this court is established by the constitution for the review and correction of *all errors* in the courts of probate and chancery and in the supreme court. In the case of *Clason* v. *Shotwell*, 12 *Johns. R.* 31, the same principle was fully recognized. Sanford, senator, who delivered the prevailing opinion, says that the jurisdiction of this court is derived from the constitution of the state, and the right of appealing to it is given by the constitution. He considers it immaterial whether the decision complained of be denominated a judgment, an order, an award, a decree, or a sentence ; that to entitle a party to his writ of error, it is enough that the proceedings have all the essential characteristics of a suit or action, and that the court have closed the litigation by a definitive decision between the parties ; that a *final determination* having been made in the supreme court, the party aggrieved has a constitutional right to bring the cause to this court for review. He says, " the question is not to be determined by technical definitions and verbal criticism, or by the terms and phrases in which judgments have been or may be expressed. The true inquiry is whether the judicial proceeding constitutes a cause by itself, and has received its final decision in the supreme court ; if so, the case contemplated by the constitution exists, and the cause may be brought to this court for revision." In this opinion, he was supported by *Lewis*, late chief justice, and by *Van Buren*, senator. In *Brooks* v. *Hunt*, cited on the other side, Ch. Kent, although in favor of quashing the writ of error in that cause, admitted that a writ of error did lie upon a final judgment or *final determination* of a cause. The exposition thus given of the jurisdiction of this court in these several cases appears to have been adopted by the legislature in their last revision of the statutes, by expressly ex-

tending the writ of error as well to *final determinations* as to *judg-ments* in civil cases. Thus they say, " writs of error upon any *final judgment* or *determination* in all civil cases are writs of right," &c. and writs of error shall be directed to the justices, commanding them to " cause a transcript of the record of the *judgment* or *final determination*" to be brought, &c. 2 *R. S.* 591, § 1, and *id.* 598, § 40. That it was the intention of the legislature to adopt the exposition given in the cases above cited is manifest from a review of the provisions of the former statutes, in which the words *final determination* are not found. 1 *R. L.* 142, § 1. *id.* 133, § 7. The provision in the revised statutes, cited on the other side, allowing a writ of error by an *absconding debtor* or his creditor in a particular case, does not operate against the plaintiff here ; on the contrary, it may well be urged in his support, as his case is clearly within the equity of the statute ; for if a writ of error be allowed in the one case, why should it be prohibited in another equally within the reason of the statute. The party was not bound to sue out a *certiorari*. The supreme court having obtained jurisdiction of the matter by the report of the officer issuing the attachment, the trustees were subject to the order of the court in relation to the execution of the powers and duties confided to them. 2 *R. S.* 13, § 68, and *idem*, 49, § 46. It was therefore optional with the party to adopt either remedy. As to the want of a *record*, in cases of summary proceedings of this kind, it is not usual to make up records, nor does the practice of the court require it. Be that, however, as it may, the writ of error ought not for that cause to be dismissed ; if required, the court will allow a record to be made up and brought in.

The following opinions were delivered :

By the CHANCELLOR. The general rule is that a writ of error will lie only on a final judgment or an award in the nature of a judgment given in a court of record, acting according to the course of the common law. There are a great variety of cases where error will not lie on adjudications affecting the rights of parties. In England it is still an open question whether a writ of error will lie on the refusal to grant a *habeas*

*corpus*, although upon the decision made when the prisoner is brought up, it does lie. In the case of *Yates* v. *The People*, this court did hold that a party was entitled to a writ of error on the refusal to allow a *habeas corpus*. So a writ of error will not lie on the denial of a *mandamus* or *prohibition*, but upon the judgment rendered in such cases error lies, since the statute of *Ann*, although previous thereto it could not be sued out. In England also, in the case of *awards*, which is in some measure an analogous proceeding, error will not lie ; nor will it lie on a refusal to set aside an annuity. In England, it is well settled that error does not lie when the court acts in a summary manner, or in a new course different from the common law. The revised statutes to which we have been referred, declaring writs of error to be writs of right as well upon a *determination* as upon a *final judgment* in all civil cases, 2 *R. S.* 591, § 1, probably refer to determinations upon *awards* and *canal appraisements*, in which a writ of error is provided by statute. In the present case a writ of error does not lie. Previous to the revised statutes, there was no appeal from the decision of trustees under the absconding debtor act. Now an appeal is given to the supreme court ; but there is no intimation in the statute that the determination of that court should be subject to review, except in the case specified in the statute of a petition to discharge the warrant issued against the debtor, 2 *R. S.* 602, § 67, and a writ of error being given in that case, the legal inference is that it was not intended to be extended to any other. I am therefore of opinion that the writ of error ought to be dismissed.

The CHIEF JUSTICE concurred in the conclusion of the chancellor that the writ of error ought to be dismissed. The rule adverted to by the chancellor, that error does not lie where the court acts in a summary manner, or in a new course different from the common law, he considered too well established to be disturbed. In *Brooks* v. *Hunt*, 17 *Johns. R.* 484, this court refused to entertain a writ of error, where an order or decision of the supreme court refusing to set aside an execution was sought to be reversed on the ground that it was a decision upon a collateral or interlocutory point, and that

ALBANY,
Dec. 1832.

In the matter
of Negus.

such decisions had never been deemed the foundation of a writ of error. The decision sought to be reversed in this case was made on a summary application to the supreme court to review the proceedings of trustees under the absconding debtor act ; the court acted by virtue of the authority conferred on them by statute, and received affidavits of what had transpired before the trustees, and made their decision thereupon ; in so doing, they proceeded in a course different from the common law, and decisions thus made on summary applications, it has been held by this court in *Simson* v. *Hart,* 14 *Johns. R.* 76, can never be thrown into the shape of a record and become the subject of review in any other court. Besides, there is no *record* before us ; the proceedings had in the supreme court have not been enrolled, and until enrolled, a rule or order of that court cannot be regarded as a matter of record. *Croswell* v. *Byrne,* 9 *Johns. R.* 280.

Mr. Justice SUTHERLAND also concurred in dismissing the writ. He adverted to the great vexation to the court and oppression to the suitors which would result were writs of error sustained in cases like the present. Here the writ of error was prosecuted by the *debtor,* and if properly sued out by him, every *creditor* who is dissatisfied with the dividends made by the trustees is equally entitled to this remedy. The number of the creditors may frequently be very great, and the writs of error correspondent. Besides, there is no necessity for resorting to a writ of error ; the party has his remedy by *certiorari,* which will reach every important question that can arise in cases of this kind, and then if dissatisfied with the decision of the supreme court, on bringing error, he will have a record to present to this court. The statutes have provided for a case in which a writ of error may be sued out, in proceedings under the absconding debtor act ; and having specified a particular case, the remedy should not be extended by construction, as the inconveniences to the court and to suitors would be intolerable.

Mr. Justice NELSON concurred in dismissing the writ, but assigned no reasons for his opinion.

Mr. Senator Tracy delivered the following opinion :

ALBANY,
Dec. 1832.

In the matter
of Negus.

In cases of this kind the supreme court obtain jurisdiction, either by a *report* made by the officer who issues the attachment, or by *certiorari*. Within 20 days after the appointment of trustees the officer issuing the attachment is required to make a report to the supreme court, of all the proceedings had before him ; after which, the supreme court has jurisdiction of the proceedings. 2 *R. S.* 13, § 68. When the supreme court once has jurisdcition, the trustees are subject to their orders in relation to the execution of the powers and duties confided to them ; and this on the application of the debtor or creditor. 2 *R. S.* 49, § 46. The question now presented in the case is, does a writ of error lie for the refusal of the supreme court to correct an error of the trustees in determining the amount due from the debtor to the attaching creditor ?

For the solution of this question, the first inquiry, it appears to me, we should make is, whether the adjudication of the trustees appealed from to the supreme court, was such an acting on the subject matter before them, that while unreversed by the supreme court, it determined the rights of the parties. In consequence of the limited opportunity I have had to examine the voluminous papers connected with the case, and the vague and indefinite manner in which the proceedings of the trustees are stated, I have been embarrased in ascertaining whether or not the allowance to the attaching creditor was made at a general meeting of the creditors pursuant to *sections* 27 *and* 28, 2 *R. S.* 46. If it were not, the adjudication by the trustees in this respect was only interlocutory, as the whole subject must be again opened before them at the general meeting of the creditors, which the statute makes it compulsory on them to convoke ; and in this view the decision of the supreme court on which the writ of error is brought, does not settle the rights of the parties. But although I cannot find this important fact clearly and precisely stated in the present case, yet by referring to the decision of the supreme court on the first motion, 7 *Wendell* 499, it appears that the adjudication there appealed from was upon the distribution of the debtor's estate, which could have been made only at or after the general meeting of the creditors. Besides, the supreme court, although it might

ALBANY,
Dec. 1832.

In the matter
of Negus.

by virtue of *sec.* 46, 2 *R. S.* 49, have entertained the motion
even to set aside an interlocutory order of the trustees, scarce-
ly would have done so, in view of the fact that the trustees
themselves would be compelled by *sections* 27 *and* 28, to pass
again on the same matter. Taking it then for established,
that the adjudication of the trustees was pursuant to the last
named sections, it seems to follow that the decision of the su-
preme court refusing to set it aside, and thereby in effect con-
firming it, was *a final determination* of the rights of the parties
in controversy. I think this conclusion is not avoided by the
suggestion which has been made, that denying a motion, is
not to be deemed a final determination of the matter, inas-
much as the motion might be renewed, the power of the court
to act on the subject not being exhausted ; for the same may
be alleged in regard to many other decisions or judgments of
the supreme court, which, notwithstanding, are undeniably
such final determinations as to sustain a writ of error. But,
although the court might permit, yet also it might refuse such
a motion to be renewed and put its refusal on such grounds
as unquestionably to deprive the party of a writ of error on that
decision. Besides, if error will not lie upon the first, for the
same cause it would not on the second, third, fourth or any
other decision, and the result would follow, that a party seek-
ing redress in this court, is to be turned away, because the
court below *might* do the justice which it has *not* done, and *will
not* do. In the mean time, the rights of the party are irrevo-
cably lost, by the trustees proceeding to the distribution of the
property, according to their erroneous adjudication.

If the refusal of the supreme court to set aside the adjudica-
tion of the trustees has determined the rights of citizens to
property, is this decision such a judgment or final determina-
tion that a writ of error lies to reverse it ? At common law a
writ of error is grantable in all cases, *ex debito justitiæ,* except
in treason and felony. *Regina* v. *Paty,* 2 *Salk.* 504. *Coke,* in
his commentary on *Littleton, p.* 288, *b.* says, "A writ of error
lieth when a man is grieved by an error in the foundation, pro-
ceeding, judgment or execution, but without a judgment or
*an award in the nature of a judgment,* no writ of error doth lie,
for the words of the writ are *si judicium redditum sit ;* and that

judgment must regularly be given by *judges of record.*" Writs of error upon any final judgment or *determination* in all civil cases are writs of right, and shall issue of course, subject to the regulations prescribed by law. 2 *R. S.* 591, § 1. If we should afford to this provision of our statute its most obvious and common sense interpretation, the question arising in this case would seem to be embraced by its very terms. To say nothing now of the construction given of the word *judgment,* by which it is taken necessarily to imply an enrolled record made up according to certain established forms ; is the expression " *or determination*" to be regarded as synonimous with judgment, and therefore unmeaning and superfluous ; or if it be not, what force or effect can be given it which will not embrace just such a decision as is now sought to be reversed ? Before the enacting of the revised statutes, and whilst our statutory provision in this respect conformed to the expression of the common law allowing the writ of error to " any party against whom *any judgment* hath been given," 1 *R. L. of* 1813, *page* 133, this court had recognized the principle before quoted from Lord Coke, that the writ of error lay to review not only a judgment technically so regarded, but " an award in the nature of a judgment." *Yates* v. *The People,* 6 *Johns. R.* 337. In that case Clinton, senator, says, page 457, " A judgment is the decision of a court upon the case before it, and the last or final determination of a tribunal is the proper subject for a writ of error. When a court *puts an end* to an action by declaring that the plaintiff has either entitled himself, or has not, to *the remedy he sues for,* then it gives a final judgment." And in that case, which was a writ of error on a refusal to allow a *habeas corpus,* he remarks, " Admitting it is not a technical judgment, yet it clearly comes within the definition of Coke, it is *an award in nature of a judgment.*" But there are cases in which a writ of error will lie at common law where *no judgment,* (technically considered,) has been rendered, as in the case of an award of execution, or a statute merchant ; *Cro. Eliz.* 319 ; it being a recognizance or acknowledgment of a debt, and technically not a judgment ; so neither is a fine of lands a judgment, and yet error lies. 2 *Bacon's Abr.* 190. In the same case of *Yates* v. *The People,* 6 *Johns. R.* 401, Mr.

ALBANY,
Dec. 1832.

In the matter of Negus.

Justice Spencer says, " the language of the record imports an ultimate and final decision by the supreme court against the prisoner." He also says, " there is no such rule existing as that a writ of error will lie only in cases where the judgment is technically *ideo consideratum est,* and protests against the doctrine that error will not lie for the want of a precedent, and adverts to the note laid down by *Blackstone,* that wherever a new injury is done, a new method of remedy must be pursued. And even Ch. J. *Kent,* in the same case, page 430, admits that error lies on a *final determination* upon the merits of a cause. The note of the case of *Clason* v. *Shotwell,* 12 *Johns. R.* 31, is, that " every final or definitive sentence or decision of the supreme court by which the merits of a cause are settled or determined, although such sentence is not *technically* a *judgment,* or the proceedings are not capable of being enrolled so as to constitute what is *technically* called a record, is a judgment, and subject to the appellate jurisdiction of the court of errors." In this case Chancellor Kent, who was in favor of dismissing the writ of error because the order of the supreme court, to reverse which it was brought, rested in discretion, insisted that a writ of error would lie upon nothing but a *definitive judgment;* not upon a determination to grant or refuse a mandamus, nor upon the exercise of discretion of a chancellor in the appointment of a guardian, nor upon refusal to grant a new trial, or to amend a plea, or to file a new plea, and concluded by saying, page 51, that error lies only upon a decision that gives or concludes the *right of the party;* yet, page 55, he admits that a writ of error lies upon a final judgment of the supreme court *upon a question of law,* notwithstanding he protests against the doctrine of its lying upon mere questions of practice. Mr. Senator Sanford, in his opinion delivered in this case, places the *final determination* of all cases in the supreme court upon a footing with the judgments of that court, and combats the conclusion contended for by Chancellor Kent, that a departure from the technical definition of a judgment by the common law would subject every decision or order of the supreme court to appeal. In denying that such would be the consequence, he justly observes, that orders merely interlocutory or auxiliary to the prosecution of a suit, are not determinations of

a cause, and concludes his reasoning on this point by saying, that the order of the court appealed from being the *final determination* of the cause in the supreme court, the party injured had the right to bring a writ of error to reverse it.

It is seen, then, that according to the prevailing opinions in both the cases of *Yates* v. *The People,* and *Clason* v. *Shotwell,* it was held by this court, that *under the decisions at common law* a writ of error lay in each ; in the first case, that the refusal to allow a habeas corpus was at all events *an award in the nature of a judgment,* and in the second, that the decision of the court was *a final determination* upon the rights of the parties, even though such decision were not capable of being enrolled so as to form what is technically called a record. But in both these cases the right to bring a writ of error was put on higher ground than a common law right. *Clinton,* senator, in 6 *Johns. R.* 467, says, "This court is established by the constitution for the review *and correction of all errors* in the courts of probate and chancery, and in the supreme court." Mr. Justice Spencer, page 402, observes, "The act organizing this court declares that *all errors* happening in the court of chancery, the supreme court, or court of probates, shall be redressed and corrected by this court. These expressions are broad, and I agree are not to be extended to give this court cognizance of cases in judgments or proceedings merely interlocutory ; but I do insist, that whenever a decision takes place in the supreme court, which is final, and of which a record can be made; and which shall decide the rights of property or personal liberty in such cases, the statute gives jurisdiction to this court." Mr. Senator Sanford, in *Clason* v. *Shotwell,* goes even further. He says he rejects from his view of the question, the statute organizing the court ; the nature and extent of the jurisdiction, he says, are to be sought and found in the constitution itself, and that to him the constitution appears to provide that the supreme judicial power of the state shall be vested in this court, and that it shall hear and finally determine all causes brought here for revision. And in page 62 of that case he says, "The right of appeal given by the constitution cannot be abridged by the common law, for so much of that law as interferes with the right of appeal is abrogated by the constitution itself ;" and

ALBANY,
Dec. 1832.

In the matter
of Negus.

concludes by saying, " All judgments of the supreme court, by which I mean, in the sense of the constitution, *all final determinations* of causes in that court, are subject to appeal and revision." If, then, whilst writs of error were limited by our statute, 1 *R. L.* 133, to *judgments* in the common law definition of them, this court, in view of the principles of its constitutional organization, extended that definition of the term so as to embrace all *final determinations* of causes in the supreme court, in whatever form they were made, must we not conclude that the legislature, in the use of the word " *determination*," 2 *R. S.* 591, § 1, and of the words "*final determination*," 2 *R. S.* 598, § 40, intended to sustain and confirm this liberal construction of the powers of this court ; and are we not required to adopt the conclusion expressed in the note of the case of *Clason* v. *Shotwell*, that a writ of error will lie upon any decision of the supreme court by which the merits of a cause are determined. That the alteration of the language of our present statute was with this view, I cannot doubt, notwithstanding the report of the revisors alleges the expression to be varied from the old statute in order to include judgments in *qui tam* and other *amphibious* suits ; an alteration clearly unnecessary in this view, and no way sustained by their reference to the case in Cowper.

Regarding, then, as I do, the decision of the supreme court refusing to set aside the adjudication of the trustees to be a final determination of the rights of the parties, both within the decision of this court in *Clason* v. *Shotwell*, and within the terms and meaning of 2 *R. S.* 591, § 1, a question arises whether the matter is brought up in such form as to warrant the definitive action of this court upon it. It is contended that it is only by a *certiorari* that the proceedings of the trustees could have been brought up so as to entitle the party to a review by us of the determination of the supreme court, and a great many inconveniences are suggested as likely to arise, if we should sanction any other course of proceeding. Without examining narrowly the number or nature of these supposed difficulties, I am inclined to think that a regard to them cannot properly have a legitimate bearing in deciding the present question. The *Revised Statutes, vol.* 2, *p.* 13, § 68, provide that the officer issuing the attachment shall report to the su-

ALBANY,
Dec. 1832.

In the matter
of Negus.

preme court all the proceedings had before him, "after which the supreme court *has jurisdiction of the proceedings ;*" and by § 46, it is declared that when the jurisdiction of the supreme court is obtained, the trustees are subject to their orders in relation to the execution of the powers and duties confided to them ; and this on the application of either the debtor or a creditor. 2 *R. S.* 49. The effect of these two provisions, in my view, is to place the whole proceedings in the supreme court, in the nature of a suit or suits prosecuted in that court ; and if I am right in this, clearly it would be unnecessary to bring up to that court by *certiorari* proceedings which already are in it, and in regard to which it is undeniable that the action of the court may be as complete without as with the aid of that writ. This view is supported by § 69, which provides that *previous* to a report, the proceedings may be removed by *certiorari,* and from which provision it may reasonably be inferred that a *certiorari* cannot issue *after a report ;* at all events, it would be a *nullity,* as all it could accomplish would already be done. I perceive no great force in the objection that without a *certiorari* all the parties in interest cannot be brought before the court, unless at least it be shown that the necessary effect of such a writ is to bring up all persons directly or indirectly interested in the controversy, which, I confess, is more than I can discover. If it be true, as objected, that any creditor of Negus, aggrieved by the allowance of Sinnott's claim, which, if the estate is insufficient, so much diminishes the payment of his debt, may, after the final decision of this case on its merits, re-open the whole controversy by a new application to the supreme court to set aside the adjudication of the trustees, still I do not perceive why the bringing up of the proceedings by a certiorari would any the more estop him ; for the proceedings would then be only where they have been ever since the report of the officer, and as the creditor would not necessarily be any more a party to the record in one form of proceeding than in the other, his rights would not be any differently affected by the judgment. But, I apprehend, if we look at this case simply as it is, such an exposure to protracted litigation does not exist, and if it did, may be easily and effectually guarded against by the supreme court adopting rules

ALBANY,
Dec. 1832.

In the matter
of Negus.

regulating the practice in such applications. But were I to concede, which I do not, that a *certiorari* would have been a better form of bringing the proceedings of the trustees before the supreme court, yet, inasmuch as the statute allowed and the supreme court permitted the more expeditious and direct mode of a motion to be adopted, I am at a loss to determine how, when the final judgment and *determination* of that court has been made, by which important rights of property are concluded, we can escape from the obligation to review that determination.

The only remaining question is, ought a formal record to have been made of this determination of the supreme court? I think this cannot be necessary. The jurisdiction over proceedings of this description is obtained by the supreme court in an informal manner, nothing more being necessary to give it than filing a report by the officer granting the attachment. The statute makes no mention of, and obviously does not contemplate a record, and the practice of the court has not made it necessary. A record in such a case is not known to the law, and it would be difficult to perceive any advantages that it would produce. Where, according to the settled practice of courts, a record in any given case is usually made up, and in a particular form, doubtless this court would require an adherence to such form; but to hold it to be indispensable in this case would, I think, be sacrificing *substance* to *form*—sustaining *formal* objections to defeat *substantial rights*. In this view of this question, I am again supported by Chancellor Sanford in *Clason* v. *Shotwell,* 12 *John. R.* 63, 65. "The constitutional right of the party to his appeal does not depend upon any English definition of a record; *it depends upon the fact that the cause has been decided against him.*" Besides, what would be gained were we to insist upon a formal record in such cases? Would there be any thing added to what is now before us, to aid in developing and deciding the real merits of the case? A *placita* and the fact that the report was made might be stated, but this, I apprehend, would in no measure direct or enlighten our judgments, or facilitate our endeavors to fulfil the great objects for which this high judicial tribunal is created. In addition to this consideration, I find, in 2 *R. S.* 544, § 19,

an expression of the legislature that sustains distinctly the position that the form of a record is not necessary to enable this court to act on a decision of the supreme court. It is in the statute concerning *arbitrations,* where a writ of error is given to bring before this court an order of the supreme court vacating an award, and it is expressly provided that to such " writ shall be returned certified copies of such order, and of all affidavits and papers used on such application."

If the court shall concur with me in denying the motion to dismiss, there will not be found, I presume, any difficulty in relieving the plaintiff in error from the embarrassment of having assigned errors before the matters on which the writ was brought were duly returned. It was an oversight very natural to happen, and of that character from which it is a matter of course to relieve the party, and to which the defendant should not have objected.

The question being put, *Shall this writ of error be dismissed?* the members voted as follows :

In the *affirmative*—The CHANCELLOR, The CHIEF JUSTICE, Mr. Justice SUTHERLAND, Mr. Justice NELSON, and Senators BIRDSALL, BRONSON, CONKLIN, CROPSEY, DEITZ, LYNDE, M'DONALD, MATHER, M'LEAN, and SHERMAN—14.

In the *negative*—Mr. Senator TRACY.

Whereupon the writ of error was dismissed, with costs.