## WILLIAMS *against* THE HARTFORD AND NEW-HAVEN RAIL-ROAD COMPANY:

### IN ERROR.

Though under the charter of *The Hartford and New-Haven Rail-road Company* the quantity of land taken for the road must be designated, so that the freeholders may know what to appraise, before the damages can be legally assessed; yet the charter does not require the width of the road to be determined, before the route is approved by the commissioners, and the freeholders to assess the damages are appointed.

The appointment of freeholders to assess the damages, in such case, is not the subject of revision by writ of error.

In *September*, 1836, *The Hartford and New-Haven Rail-road Company* made an application in writing to the superior court in *Hartford* county, stating, That the General Assembly of this state, in *May*, 1833, granted them an act of incorporation, empowering them to locate and construct a rail-road from some suitable point in *Hartford* to the city of *New-Haven ;* and for that purpose to enter upon, take, purchase and hold such real estate as might be necessary and convenient therefor, upon paying to the persons whose lands or estate should be taken, all the damages that might arise to them thereby ; and providing, that if the person or persons to whom damages might so arise and said company could not agree as to the amount of such damages, said company should apply to the superior court of the county in which the real estate damaged was situated, and thereupon said court should appoint three disinterested and judicious freeholders to assess the amount of such damages : that on the 30th of *August*, 1836, said company, in pursuance of the powers given by their act of incorporation, made a final survey and location of a route or line to be the road, course or way, whereon to construct said rail-road or way from the *Pardee* lot in the city of *New-Haven* to *Main* street, at or near its intersection with *Mulberry* street, in the city of *Hartford ;* and said company caused said route or line to be designated and established as the final route or line of said rail-road : that the commissioners on said rail-road, after notice duly given to the several persons whose lands or estate had been taken for said road, by said company, did, on the 1st of *September*, 1836, approve of the location of said rail-road, and did establish the same according to the provisions of said act of incorporation : that said rail-road, thus located and established, passes over land or estate of *Ezekiel Williams*, of *Hartford*, situated in the town of *Hartford*, [describing it :] that said company, on the 15th of *September*, 1836, applied to the respondent, and endeavoured to agree with him upon the damages that would arise to him, by taking said land ; but said company and the respondent were unable to agree upon that subject : praying the court to appoint three disinterested and judicious freeholders to assess the damages.

Appended to this statement was a citation to the respondent to appear before the court, and shew cause why the prayer of the petitioners should not be granted.

*Hartford,*
*June, 1839.*

Williams
*v.*
The Hartford
& New-Haven
Rail-Road Co.

*Hartford,*
*June, 1839.*

Williams
*v.*
The Hartford
& New-Haven
Rail-Road Co.

The citation was duly served ; and the respondent appeared in court, and filed a written answer, averring, That at the time when he was served with notice to appear, and at the time when the commissioners met to hear the objections of the respondent and approve said location, said line or route had been no otherwise surveyed or located through the land of the respondent, than by the petitioners having located or designated a line for the centre of said road ; but the petitioners had not decided upon the width of said road, nor was the respondent informed or notified whether the petitioners would require the land of the respondent of the width of four or six rods, or of any other number of rods permitted by their charter ; which was made part of the respondent's answer.

The court found the allegations in the petition to be true ; and the allegations in the answer to be true, but insufficient ; and thereupon *James Dodd, Thomas C. Perkins* and *Bennet Bronson,* esqrs., judicious and disinterested freeholders, were appointed to appraise said land according to the charter of said company.(*a*)    These freeholders having given notice

(*a*) The only clauses of the charter, which are material in this case, are the following : *Sect.* 1. "And said company is hereby authorized and empowered to locate, construct and finally complete a single, double or treble rail-road or way from some suitable point in the town of *Hartford,* by the most direct and feasible route, to the city of *New-Haven.*"    "And for the purpose of constructing said rail-road or way, said company is hereby authorized to lay out their road not exceeding six rods wide through the whole length ; and for the purpose of cuttings and embankments, and for obtaining stone and gravel, may take as much more land as may be necessary for the proper construction and security of said road ;    provided that all damages that may be occasioned to any person or corporation, by the taking of such lands or materials, for the purpose aforesaid, shall be paid for, by said company, in the manner hereinafter provided."

*Sect.* 7. "Said company is also hereby empowered to purchase, receive and hold such real estate as may be necessary and convenient in accomplishing the object for which this incorporation is granted ; and may, by their agents, surveyors, engineers and servants, enter upon such route or places, to be designated by the directors, and approved by three commissioners, to be appointed by the General Assembly for that purpose, who shall have no interest in said rail-road, after notice to the persons whose lands or estate may have been taken, and after hearing all objections which may, by such persons, be made to the location made by the directors as the line, road, course or way whereon to construct said rail-road or way ; and it shall be lawful for said company to enter upon and use all such lands and real estate as may be necessary for them, in the manner and for the purposes set forth in the first section hereof ; and said company shall be holden to pay all damages that may arise to any person or persons ; and if the person or persons to whom damage may so arise and said company cannot agree as to the amount of such damages, it shall be the duty of said company to apply to the superior court of the county in which the real estate damaged may be situated ; and thereupon said superior court shall appoint three disinterested and judicious freeholders to assess the amount of such damage ; and said freeholders, after being sworn, shall give notice to the parties of the time and place of their meeting on the business of their appointment ; at which time and place they shall proceed to hear the parties, and to enquire into the

to the respondent, attended to the business of their appoint-ment, on the 27th of *November*, 1838; and having carefully viewed and examined the premises, and fully heard the parties, assessed the just damages done to the respondent, by said company, in taking said land, which contains one acre, two roods and seven rods, at 1650 dollars.

*Hartford,*
*June, 1839.*

Williams
*v.*
The Hartford
& New-Haven
Rail-Road Co.

To revise this proceeding, the respondent brought a writ of error in this court.

*W. W. Ellsworth* and *Parsons*, for the plaintiff in error, after remarking that the act incorporating the defendants is in derogation of the common rights of other citizens, and is, therefore, to be construed strictly—that is, the powers and privileges of the company cannot be extended beyond the express words, or their clear import; (*New-York Fire Insurance Company* v. *Sturges*, 2 *Cowen*, 665. *Idem* v. *Ely*, 2 *Cowen*, 678. *Bloodgood* v. *The Mohawk and Hudson Rail-Road Company*, 18 *Wend*. 41. *per Maison, S.*)—contended, 1. That the road must have been *located* before the commissioners could approve of it. The first act which the company are authorized to do, is, to "locate," or "lay out" their road. *Sect.* 1. All the words used in the charter relating to this subject, imply, that the road is to be *defined*. The "route" mentioned in the 7th section is the same as the "road" mentioned in the 1st. The "location" spoken of in the 7th section, relates to the "line, road, course or way," whereon the rail-road is to be constructed; and the company are authorized "to enter upon and use all such lands and real estate as may be necessary for them, *in the manner and for the purposes set forth in the 1st section.*" Further, the commissioners, by the 7th section, after the lands are taken, and the location made, are to give notice to the persons whose lands are so taken, and hear the objections of the parties, and *then* approve or not. This all proceeds on the ground that property has been taken and private injury sustained; and the *quantum* of damage may be,

extent of the damages, and shall assess just damages to the person or persons, whose real estate may be taken or injured, taking into consideration any benefit or advantage which may result to such person or persons from said rail-road; which assessment shall be in writing under the hands of said freeholders, and the same shall be returned to the clerk of said superior court, who shall record it."

*Sect.* 9. "Said company is hereby authorized to construct, erect, build, make and use, a single, double, or treble rail-road or way, of suitable width and dimensions, to be determined by the directors of said company, on the line or course by them designated."

*Hartford,*
*June,1839.*

*Williams*
*v.*
*The Hartford*
*& New-Haven*
*Rail-Road Co.*

and ought to be, the turning point of the approval. If the road is *four* rods wide, it may *not* injure the proprietor; but if *six* rods wide, it may ruin him. The company are not authorized to lay out their road, or to take any land *after* the commissioners meet. *Beekman* v. *Saratoga and Schenectady Rail-Road,* 2 *Paige,* 46. *Bonaparte* v. *The Camden and Amboy Rail-Road Company,* 1 *Bald.* 206.

The proceedings under the highway laws in this and the neighbouring states, are analogous. The specific land to be encumbered, by the highway, is to be ascertained, by the locating committee. *The Commonwealth* v. *Coombs,* 2 *Mass. Rep.* 489. 490. *The Commonwealth* v. *Cambridge,* 7 *Mass. Rep.* 158. 161. 167. *Herrick* v. *Stover,* 5 *Wend.* 580. 583. 584. *Windsor* v. *Field,* 1 *Conn. Rep.* 279. 283. *Beardslee* v. *French,* 7 *Conn. Rep.* 125. 127.

2. That the designation of the central line is not a location of the road, within the charter.

*Hungerford,* for the defendants in error, after remarking, that the charter of this company, which was incorporated to effect a great public object, ought to receive a reasonable and fair construction, contended, that there was no irregularity in the proceeding in question. A clause in the 1st section authorizes the company to *locate* the road, but does not define the manner. A subsequent clause in the same section authorizes them, for the purpose of constructing their road, to lay it out not exceeding six rods in width. This clause refers to the *construction* merely, and not to the *location* of the road; and in its construction restricts the company to six rods in width. The 7th section provides for the location, and authorizes the company, by their agents, &c., to enter upon such route or places, to be designated by the directors, and approved by the commissioners. The "*route*" here spoken of, means merely the *direction* of the road, and not the road itself; and it is this route, and not the width of the road, which is made subject to the controul of the commissioners. By the 9th-section, the company are authorized to make the road of suitable width and dimensions, to be determined by the directors, on the line or course by them designated. This section relates to the construction of the road, and not the location, and expressly provides, that the width and dimensions are to be determined by the directors.

The general statute prescribing the mode of laying out high-  *Hartford,*
ways being entirely different from the charter of this company,  June, 1839.
the decisions made in reference to that statute, reflect no light  Williams
upon the charter in question.   Hence the cases of *Field* & al.  The Hartford
v. *Windsor* & al. 1 *Conn. Rep.* 279., and *Beardslee* v. Rail-Road Co.
*French,* 7 *Conn. Rep.* 125., are inapplicable to the present
case.

WAITE, J.   It appears from the record in this case, that
the defendants, having, in pursuance of the provisions of their
act of incorporation, caused the centre line of their road to be
surveyed, approved, and established, applied to the plaintiff in
error, over whose land the road passed, to agree with them
upon the amount of damages that would accrue to him.   Being
unable to make such agreement, they applied to the superior
court, and procured the appointment of freeholders to assess
the damages.

It is now claimed, that that appointment was *erroneous,*
because at the time it was made, the *width* of the road had
not been established.   It is not denied but that every act was
done, necessary to give the court the power to make the ap-
pointment, except the designation of the *width* of the road.
Was that indispensably necessary before the appointment could
be legally made ?   This must depend upon the language used
in the act of incorporation.

It is insisted, that not only the *line* or *course* of the road
should be approved by the commissioners, but the *width* also.
Upon examining the act, we do not find that to be required,
either by any express provision, or by necessary implication.
The only part of the act which prescribes the duties of the
commissioners, is found in the seventh section.   It is there
provided, that "said company may, by their agents, surveyors,
engineers and servants, enter upon such route or places to be
designated by the directors, and approved by three commis-
sioners to be appointed by the General Assembly for that pur-
pose, who shall have no interest in said rail-road, after notice
to the persons whose lands or estate may have been taken,
and after hearing all objections which may, by such persons,
be made to the location made by the directors as to the line,
road, course or way whereon to construct said rail-road or
way."   When the directors had designated the centre line of

*Hartford,*
*June, 1839.*

Williams
*v.*
The Hartford
& New-Haven
Rail-Road Co.

their road, they had designated the route, within the require-ments of their charter ; and when that was legally approved by the commissioners, the *route* was established. By the first section, the company are " authorized to lay out their road not exceeding six rods wide through ˏthe whole length ; and for the purpose of cuttings and embankments, and for obtaining stone and gravel, may take as much more land as may be *necessary* for the proper construction and security of said road." There is nothing in that section requiring any approbation by the commissioners. When the centre line was established, the company were limited in the construction of their road to a distance not exceeding three rods from that line. They might take less than a quantity six rods wide,—that is, three rods on each side of that line,—but could not take more, unless *necessary* for cuttings and embankments, or for obtaining stone and gravel.

In the ninth section, the company are " authorised to con-struct, erect, build, make, and use a single, double or treble rail-road or way, of suitable width and dimensions, *to be de-termined by the directors in the line or course* by them de-signated." Here nothing is required of the commissioners. The directors are authorised to determine the width of the road, not exceeding six rods, as provided in the first section, upon the *line or course* designated. The *line or course* here referred to, obviously means that which, by the seventh section, was to be designated, by the directors, and approved by the commis-sioners.

But it has been said, that in the clause requiring the com-missioners to approve of the *route or places*, after hearing all objections as to the line, road, course *or* way, the word "*or*" is to be construed "*and ;*" and that the true construction is, that the commissioners must approve of the route *and* places to be taken for the road, and establish the line, road, course *and* way. This construction evidently is a manifest departure from the express language of the charter. There is no doubt but that in some instances in construing devises and statutes, *or* has been holden to mean *and*. But that can only be done where it is necessary to correct an apparent mistake, and make sense of what would otherwise be absurd. *Mansfield,* C. J. in giving such a construction to a will, observed, that " the idea of a devisor giving an estate" in the manner claimed, upon

a literal construction, " was so absurd and improbable, that it was next to an impossibility to impute such an intention to him." *Fairfield* v. *Morgan*, 2 *New Rep.* 38. 56. Lord *Kenyon*, C. J. in giving a similar construction to a statute, said : " I would adopt any construction of the statute, that the words will bear, in order to avoid such monstrous consequences as would manifestly ensue from the construction contended for by the defendant." *Fowler* v. *Padget*, 7 *Term Rep.* 509. 514.

*Hartford,* June, 1839.

Williams *v.* The Hartford & New-Haven Rail-Road Co.

Now, in the present case, we can discover nothing so absurd, improbable, or monstrous in the act as will justify a departure from the express language used. The legislature may have considered the rights of the citizen sufficiently guarded, when they provided, that the line or course of the road, should receive the sanction of disinterested commissioners, and then the company be allowed to construct the road upon that line, of such width as they considered proper, not exceeding six rods. The commissioners have the power of protecting the lands of individuals from improper encroachments, by refusing their approbation of a centre line, which shall approach within three rods of any land that ought not to be taken ; or which shall make it necessary to take any other line for cuttings and embankments, or for obtaining stone and gravel, that ought not to be used.

There is no doubt but that, before the damages can be legally assessed, the quantity of land taken, should be designated, so that the freeholders may know what to appraise. But the act of incorporation does not require this to be done before the freeholders can be appointed. As soon as the *route* is established, the parties are in a situation to negotiate respecting the damages. They know where the line is, and the greatest quantity of land which can be taken on each side of it. In this negotiation, the company may stipulate for a quantity less than a tract six rods wide, provided a road can be constructed upon it, of suitable width and dimensions ; but cannot take more than that. After the line or course of the road has been duly established, and the parties disagree as to the amount of damages, the company are authorized to apply to the superior court for the appointment of freeholders. When they are called upon to make the assessment, they must be informed as to the lands taken.

*Hartford,*
*June, 1839.*

Williams
*v.*
The Hartford
& New-Haven
Rail-Road Co.

It has been further said, that it does not appear from the return of the freeholders what land they appraised. This clearly can furnish no foundation for a writ of error. Their doings were not returned to the court, but to the clerk ; and were by him recorded. There was no act done, or required to be done, by the court, upon that return. The court, therefore, cannot be chargeable with error in relation to a matter which was never before it.

For these reasons we are of opinion that there was no error in the proceeding of the court below.

But for another reason the present writ of error cannot be sustained. The proceeding in the superior court, was not such as to lay a foundation for it. It was simply an application for the appointment of freeholders to assess damages occasioned by the laying-out of the road. It is true, the application was made in a formal manner, setting forth the reasons for requesting the appointment. Notice was served upon the adverse party, who appeared and shewed cause against the appointment. But this formality in the proceeding cannot give the parties a right to review the question upon a writ of error.

" This writ," says Lord Coke, " lyeth when a man is grieved by an error in the foundation, proceeding, judgment or execution ; but without a judgment, or an award in the nature of a judgment, a writ of error doth not lie." *Co. Litt.* 288. *b.* In the state of *New- York*, a summary application was made to the supreme court to review the proceedings of trustees under the absconding debtor's act ; and the court, by virtue of the authority conferred upon them by statute, heard the parties, and made their decision. A writ of error was afterwards brought to the court for the correction of errors, and dismissed, upon the ground that it would not lie in such a case. Chief Justice *Savage*, in giving his opinion, said, that decisions thus made could never be thrown into the shape of a record, and become the subject of review in any other court ; that the rule that error does not lie where the court acts in a summary manner, in a course different from the common law, he considered too well settled to be disturbed. In the matter of *Negus,* 10 *Wendell* 34.

Perhaps in this state, where the proceeding by *certiorari* has never been adopted, a more extended application of the remedy by writ of error, may, in some cases, have been made ;

yet that application is by no means unlimited. *White* v. *Trinity Church, 5 Conn. Rep.* 187. *Lewis* v. *Hawley,* 1 *Conn. Rep.* 49. *Doane* v. *Cummins,* 11 *Conn. Rep.* 152. To extend the remedy to a case like the present, would be a manifest departure from the principles of the common law, unsupported by any practice in *Connecticut.*

The writ of error, therefore, must be dismissed.

The other Judges were of the same opinion, except WILLIAMS, Ch. J., who gave no opinion, being related to one of the parties.

Writ of error dismissed.