## HARTFORD & C. W. R. CO. v. MONTAGUE.

(Circuit Court, D. Connecticut. May 9, 1899.)

**1. REMOVAL OF CAUSES—MOTION TO REMAND—TIME FOR FILING**

It is the settled practice in the circuit courts of the United States in the Second circuit to allow a motion to remand to be made at once on the removal of a cause from a state court, without waiting for the next term, and, unless the record is filed by the removing defendant within a reasonable time, to permit it to be filed by the plaintiff.

**2. SAME—NATURE OF SUIT—STATUTORY PROCEEDING TO CONDEMN PROPERTY.**

Under the statutes of Connecticut relating to the condemnation of property under the power of eminent domain, which delegate to a judge of a state court the power to first determine the right to take the property, and then to appoint a commission to fix the compensation, such a proceeding is not a suit at common law or in equity, of which a federal court would have original jurisdiction under the judiciary act of 1888, and hence is not removable under such act.

Gross, Hyde & Shipman, for complainant.

Edward D. Robbins, for defendant.

TOWNSEND, District Judge. Motion to remand. The plaintiff herein originally applied to a judge of the superior court of the state of Connecticut for the appointment of appraisers to estimate damages for the taking and occupation of certain real estate for railroad purposes, belonging to the defendant, in accordance with the provisions of section 3464 of the General Statutes of the state of Connecticut. Said judge having fixed a date for a hearing thereon, defendant seasonably removed the case into this court upon the ground that the controversy was between citizens of different states, and that the amount in dispute exceeded, exclusive of costs, the sum of $2,000. The plaintiff now moves to remand for want of jurisdiction, alleging that such proceeding is not a suit of a civil nature at common law or in equity, of which the circuit courts of the United States are given original jurisdiction. It is claimed that, even if, prior to the act of March 3, 1887, as amended by the act of August 13, 1888, such a case could be removed into the federal courts, such right of removal was taken away by said acts, the effect of which is to provide that only such suits can be removed as might have been originally brought in the United States circuit courts. Railroad Co. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563.

The preliminary question was raised by counsel for defendant that the motion to remand could not be heard before the beginning of the next term of the circuit court after removal. It appears that there has been much conflict upon this question between the different circuits. Hamilton v. Fowler, 83 Fed. 321; Kansas City & T. R. Co. v. Interstate Lumber Co., 36 Fed. 9. It has been the settled practice in this circuit for many years to allow the removing defendant a reasonable time in which to file the record, and, upon his failure so to do, to thereafter permit the plaintiff to file the record, and in either event to allow the plaintiff to move instanter to remand.

The sole remaining question is whether this is a suit of which this

court would have original cognizance. The act of 1887, as amended, provides:

"Any other suit of a civil nature at law or in equity of which the circuit courts of the United States are given jurisdiction by the preceding section * * * may be removed into the circuit court," etc.

The preceding section provides as follows:

"That the circuit court of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, when the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states."

Even if this proceeding is a suit at law, within the interpretation of the earlier removal statute by the supreme court of the United States in Searl v. School Dist., 124 U. S. 200, 8 Sup. Ct. 460, it does not necessarily follow that it is a suit of which the circuit court would have had original cognizance. It is purely a statutory proceeding, whereby the legislature of the state has conferred upon a judge of one of its courts the power to make the original order authorizing the taking of property within the state by the exercise of the power of eminent domain. The act of 1887 was "mainly designed for the purposes of restricting the jurisdiction of the circuit courts of the United States." Smith v. Lyon, 133 U. S. 315, 320, 10 Sup. Ct. 303; In re Pennsylvania Co., 137 U. S. 451, 454, 11 Sup. Ct. 141; Railroad Co. v. Davidson, 157 U. S. 201, 208, 15 Sup. Ct. 563.

In Patterson v. Boom Co., 3 Dill. 465, Fed. Cas. No. 10,829, Id., 98 U. S. 405, where the cause was removed prior to the act of 1887, the defendant landowner had appealed to the state court from an award of damages by commissioners for the taking of his land by the boom company. Mr. Justice Field there said as follows:

"The position of the company on this head of jurisdiction is this: that the proceeding to take private property for public use is an exercise by the state of its sovereign right of eminent domain, and with its exercise the United States, a separate sovereignty, has no right to interfere by any of its departments. This position is undoubtedly a sound one, so far as the act of appropriating the property is concerned. The right of eminent domain,—that is, the right to take private property for public uses,—appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. The clause found in the constitutions of the several states providing for just compensation for property taken is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested. * * * The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law, in the ordinary sense of those terms. But when it was transferred to the district court by appeal from the award of the commissioners, it took, under the statute of the state, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents."

In Upshur Co. v. Rich, 135 U. S. 475, 10 Sup. Ct. 651, the court, referring to Boom Co. v. Patterson, supra, Pacific Railroad Removal Cases, 5 Sup. Ct. 1113, and Searl v. School Dist., supra, said as follows:

"The general rule with regard to cases of this sort is that the initial proceeding of appraisement by commissioners is an administrative proceeding, and not a suit; but that if an appeal is taken to a court, and a litigation is there instituted between parties, then it becomes a suit, within the meaning of this act of congress. In Boom Co. v. Patterson, the company was authorized by the state laws of Minnesota to take land for the purpose of its business, and to have commissioners appointed to appraise its value. If their award was not satisfactory, either to the company or to the owner of the land, an appeal lay to the district court, where it was to be entered. The clerk 'as a case upon the docket'; the landowner being designated as 'plaintiff' and the company as 'defendant.' The court was then required to proceed to hear and determine the case in the same manner that other cases were heard and determined. Issues of fact were to be tried by a jury, unless a jury was waived. The value of the land being assessed by the jury or the court, as the case might be, the amount of the assessment was to be entered as a judgment against the company, subject to review by the supreme court of the state on writ of error. This mode of proceeding was followed. The boom company and the landowner both appealed from the award of the commissioners. When the case was brought before the district court, the owner, being a citizen of another state, applied for and obtained its removal to the circuit court of the United States, where it was tried before a jury, and a judgment was rendered upon their award. We held that the appeal in that case was a suit, within the meaning of the act of congress authorizing the removal of causes to the federal courts."

In Searl v. School Dist., supra, especially relied on by counsel for defendant, the condemnation proceedings under the Colorado law were held to be adversary judicial proceedings, because the defendant therein was entitled to a jury to ascertain, determine, and appraise damages, presided over by a court which should pass upon the evidence offered according to the rules of law, and further to a motion for a new trial and an appeal to the supreme court, and a writ of error therefrom. And the court implies that, if there was nothing more than an appeal to the commissioners to ascertain compensation, the proceedings, even under the prior removal act, would not be a suit at law.

It seems clear that the proceedings in these cases could not have been originally begun in the circuit court of the United States. They were either originated by a board of commissioners who should be freeholders, or were brought before a county court, which had the power to exercise various functions, but not those of a judicial nature, as in Upshur Co. v. Rich, supra. Mr. Justice Bradley there said that the assessment made by such a court could not be called a suit, and could not thus be removed, and "the appeal from the assessment * * * was not a suit, within the meaning of the removal act, though approaching very near the line of demarkation."

The statute of Connecticut under which these proceedings were taken provides that the railroad company "may apply to any judge of the superior court for the appointment of appraisers to estimate all damages that may arise to any person from the taking and occupation of such real estate for railroad purposes, and after reasonable notice * * * such judge shall appoint three appraisers who shall * * * view the premises and estimate such damages, and * * * return an appraisal of such damages in writing, under their hands, to the clerk of the superior court in the county where the estate lies, who shall record it; and when so returned and recorded, such ap-

praisal shall have the effect of a judgment, and execution may issue at the end of sixty days," etc.   This is a proceeding for the taking of land and appraisal of damages, without any provision for a trial by a jury or by a court, and not based, necessarily, upon the introduction of any evidence, except that the appraisers "shall view the premises," and without any provision for an appeal by the party aggrieved.

If the application to the judge in the case at bar is analogous to those in the foregoing cases, as is claimed by counsel for defendant, and if it might have been removable under the earlier removal act, it cannot be claimed that it is a suit which could have been originally brought in the circuit court.   It is only the first step in a proceeding which has not assumed the shape of a pending suit, and in which there is to be no trial of questions of fact or of law, and no jury and no appeal.   The interpretation of this statute by the court of last resort of this state is of great importance in the determination of its character.   In Railroad Co. v. Long, 69 Conn. 424, 37 Atl. 1070, Chief Justice Andrews, delivering the opinion of the court, said in reference to the provisions of this statute:

"Unlike the adjudication of the necessity and the extent of the taking, the whole process by which the compensation is ascertained is judicial. The legislature may determine what private property is needed for public purposes (that is a question of political and legislative character); but, when the taking has been ordered, then the question of compensation is judicial. The land-owner is not entitled, as a matter of right, to a jury trial, because the constitution has not so required; but he is entitled to have an impartial tribunal, with the usual rights and privileges which attend judicial investigations. It is a suit at law.   Searl v. School Dist., 124 U. S. 197, 8 Sup. Ct. 460.   Under our practice, the application to the judge to appoint the appraisers is the first step in the judicial process.   And, as we have indicated, it was necessary for the judge to pass upon the questions presented in the statute and alleged in the application, before he had jurisdiction to appoint the appraisers.   The power to appoint implies the power to pass upon and decide the jurisdictional facts."

See, also, Williams v. Railroad Co., 13 Conn. 110; Clark v. Saybrook, 21 Conn. 313.

The theory and practice of the Connecticut condemnation proceedings are therefore radically different from those already considered. Here the determination of the constitutional right of property of the party is the preliminary step in the proceeding, and, when the right of taking is once decided by the judge, there is no appeal therefrom. The exercise of the sovereign power of eminent domain has been delegated by the legislature to the judge of one of its courts, and to no other tribunal, and his decision thereon is final.   In the cases already considered, arising under the laws of other states, the preliminary step is the assessment of damages, and thereafter the power is delegated to the court to pass upon all the rights of the parties involved.   In Connecticut the only judicial question before the judge is whether the land shall be taken.   The decision of this question, the court held in Boom Co. v. Patterson, supra, was the exercise of the sovereign right of eminent domain, and was one with which the federal court had no right to interfere.   Inasmuch, therefore, as the state has reserved to the judges of its courts the final determination of the right of appropriation of property as the initial step in the

proceedings, it seems clear that this case is not one of which this court would have had original cognizance. In the absence of clear and express language, it will not be presumed that the legislature of this state intended to delegate to any other tribunal the exercise of the sovereign right of eminent domain.

These considerations seem to be decisive. But there is another forcible suggestion as to the intention of the legislature in the provision that the "clerk of the superior court in the county where the estate lies shall record the appraisal of damages." The laws regulating transfers of real estate in the state of Connecticut provide for a record of all transactions affecting the title thereto, either in the probate courts or in the office of the town clerk, or in the files of the state courts. The whole record system in the state of Connecticut depends upon the constructive notice to parties of title or incumbrances in accordance with these provisions. It could not be presumed that the legislature of the state of Connecticut, in passing this law, proposed to confer upon a clerk of a court of the United States the sole power to record proceedings of this character in his office, wherever that office might be situated. These conclusions dispense with the necessity of considering the further claim that proceedings of this character are in the nature of a proceeding in rem (Stevens v. Battell, 49 Conn. 162), and are therefore within the reasoning in Re Cilley, 58 Fed. 982. The motion to remand is allowed.