### STATE OF NEW JERSEY v. CORRIGAN et al.

(Circuit Court, D. New Jersey. July 28, 1905.)

1. CRIMINAL LAW—REMOVAL OF CAUSES—MOTION TO REMAND—TIME OF MAKING.

A motion to remand to the state court an indictment found therein, and removed to this court, can be made prior to the first day of the then next term of the federal court, upon the production by the state of copies of the proceedings in the state court; and this notwithstanding Rev. St. § 641 [U. S. Comp. St. 1901, p. 520], gives the petitioners until the first day of the next term in which to produce and file a copy of said proceedings in the federal court. The act does not prevent the nonpetitioning party from filing such copy before the next term, and if this be done, and a motion to remand be thereupon made upon notice, such motion will be entertained.

2. SAME—QUALIFICATION OF GRAND JURORS—EQUAL CIVIL RIGHTS.

The statute of the state of New Jersey relative to the qualifications of grand jurors considered, and *held*, that neither the statute itself, nor any decision of the highest court of that state, has denied to or prevented the enforcement of any rights secured to the petitioners by any law providing for the equal civil rights of citizens of the United States. *Held*, further, that under the facts disclosed by the petition the petitioners have adequate remedy for their alleged grievances in the state courts, and, failing therein, can obtain such relief by a writ of error to the United States Supreme Court.

(Syllabus by the Court.)

On Indictment. On motion to remand to the state court.

Robert H. McCarter, Atty. Gen., for the motion.
Alan Strong, opposed.

CROSS, District Judge. Application is made by the Attorney General of this state, upon notice to the petitioners, to remand to the state court for trial an indictment found against them in the Middlesex county court of oyer and terminer, which has been removed to this court. The record was brought into this court during the present term. Counsel for the defendants raises the point that the motion to remand is premature, for the reason that the petitioners have until the first day of the next term in which to file the record in this court, and that until that time this court has no jurisdiction. The act under which the case was removed is section 641, Rev. St. [U. S. Comp. St. 1901, p. 520], which provides for the removal of any criminal prosecution commenced in any state court "against any person who is denied or cannot

enforce in the judicial tribunals of the state, or in the part of the state where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States or of all persons within the jurisdiction of the United States," etc.   It further provides the procedure to be followed for the removal of such cause for trial into the next Circuit Court to be held in the district where it is pending.   The act makes it the duty of the state court to furnish the petitioner with copies of all proceedings in the case, and provides that, if such copies are filed by the petitioner in the Circuit Court on the first day of the next session, the cause shall proceed in the same manner as if instituted in that court by original process, but, if the clerk fails to furnish such copies, the suit may be docketed by the petitioner in the Circuit Court, which court shall then have jurisdiction therein, and may take steps to require the plaintiff to file a complaint in the cause upon pain of dismissal.   It then provides that if, without refusal of the clerk to furnish such copies, the petitioner fails to file the same, a certificate under the seal of the Circuit Court stating such failure shall be given, and upon its production in the state court the cause shall proceed as if no petition for removal had been filed.

It clearly appears by the act that, upon a proper petition being filed in the state court, that court at once loses its jurisdiction, although any bail given therein is continued in force.   The petitioners now contend that this court does not acquire jurisdiction until after they have filed a copy of the proceedings, which they are not required to do until the first day of the next term.   If this be so, the cause is in the air for a period of possibly six months.   Such a condition of affairs would certainly be most prejudicial to the interests of justice, as witnesses might die or become scattered, or questions arise requiring immediate solution.   Some court should have constant jurisdiction of the case.   There should be no hiatus of jurisdiction.   Indeed, it is impossible to conceive of a court case which is not continuously and at all times subject to the jurisdiction of some court.   A construction of the statute which would compel such an anomalous situation ought not to be adopted, if there is any reasonable way of escaping it.   The statute puts the duty upon the petitioners of producing the record and filing it within a fixed time, upon pain of dismissal, but there is nothing in the act which prohibits the state from anticipating such action of the petitioners.   As already indicated, it is in the interests of justice that, once the state court loses jurisdiction, the federal court should forthwith acquire it.   By such a construction the petitioners lose none of their rights.   It is true, an opposite construction would afford them some delay, but to this they have no claim.   On the contrary, their only right in the premises is that accorded them by the Constitution—of a speedy trial.

The language of section 641, under consideration, varies somewhat from the sections which provide for the removal of civil causes, although in the latter case the burden is likewise cast upon

the petitioning party of producing a transcript of the record in the Circuit Court on or before the first day of the next term. Civil causes are, however, being constantly remanded to the state courts from whence they were removed by the nonpetitioning party, without waiting until the next term. The nonpetitioning party produces the record, and the motion to remand is thereupon at once made. This practice has become settled, and the reasons given therefor may be found in the following among other cases: Delbanco v. Singletary et al. (C. C.) 40 Fed. 177; Mills v. Newell (C. C.) 41 Fed. 529; Hartford, etc., Co. v. Montague (C. C.) 94 Fed. 227; Consolidated Trac. Co. v. Guarantors' Liability Co. (C. C.) 78 Fed. 657; Thompson v. Chicago, etc. (C. C.) 60 Fed. 773; Anderson v. Appleton et al. (C. C.) 32 Fed. 855, 857. These cases all proceed upon the theory that, once the state court loses its jurisdiction, the Circuit Court acquires it, upon the production of the record therein, no matter by whom it is produced. We think· this reasoning is applicable to the present case, and we adopt it in the absence of any authority directly bearing upon the point under consideration. In the case of Mills v. Newell, 41 Fed. 530, the court said:

"When a transcript is entered in the Circuit Court by the nonpetitioning party, and the attention of the court is called to it, and the record on its face shows the case is one of which the federal court cannot take jurisdiction, it will entertain a motion to remand the cause, in order to prevent delay and secure justice. The court would certainly remand this cause if the record was filed on the first day of the then next session, and its attention was called to it at that time; and as stated by the judge in the case of Delbanco v. Singletary (C. C) 40 Fed. 181: 'Why should a court hesitate or decline to look fully into the record in the first instance, and determine whether or not it has any jurisdiction of the case, when months afterwards it must make this examination, and, failing to find jurisdictional facts, must vacate all orders theretofore made, and remand the case to the state court?'"

In the case of Delbanco v. Singletary there was a rule of the Circuit Court which permitted the nonpetitioning party to at once produce the record and make a motion to remand, but it is obvious that the rule would have been nugatory if it ran contrary to the express provisions of the statute. The fact that the statute was silent in the matter made the rule possible, and so, in the case at bar, as the statute is silent, and the interests of·speedy justice demand that the motion to remand be made with as little delay as possible, we think it should be entertained.

Furthermore, it is at least an open question whether section 5 of the act of March 3, 1875, c. 137, 18 Stat. 472, section 629, Rev. St. U. S. [U. S. Comp. St. 1901, p. 511], does not, in all cases of removal, confer upon the Circuit Court the right to remand so soon as its want of jurisdiction is made apparent; but, be that as it may, we hold—reasoning by analogy from the practice adopted in civil causes—that the motion to remand is properly made at this time. We have to consider, then, whether the case at bar was removable from the state court to the Circuit Court under section 641.

Section 47 of an act entitled "An act concerning juries" (2 Gen. St. N. J. p. 1853) provides that every person summoned as a grand juror shall be, among other things, above the age of 21 years and under the age of 65 years, and, if any person who is not so qualified shall be summoned as a grand juror, it shall be good cause of challenge to any juror, provided that no exception to any such juror on account of his age shall be allowed after he has been sworn or affirmed. The petitioners were indicted for an alleged offense committed after the grand jury which indicted them had been sworn. Consequently they claim they had no right, under the above statute, to challenge a grand juror before he was sworn, who, it is admitted, exceeded the age limit thereby fixed; and, as a motion to quash and a plea in abatement based on such incapacity were both overruled by the state court, they claim a right of removal under the provisions of section 641 of the United States Statutes.

Before taking up this question specifically, it may be well to consider the construction which has been placed by the courts upon that section. The two leading cases which illustrate when the act is and when it is not applicable to the removal of a cause are Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664, and Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667. The latter case holds that:

"The denial or inability to enforce in the judicial tribunals of a state rights secured to a defendant by any law providing for the equal right of all persons, citizens of the United States, of which section 641 speaks, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the Constitution or the laws of the state, rather than a denial made manifest at the trial of the case. In other words, the statute has reference to a legislative denial or an inability resulting from it."

Section 641, it has been repeatedly held, is not so broad in its terms as the fourteenth amendment to the Constitution; and it has no reference, as we think, to judgments or opinions of inferior courts, however erroneous or subversive of individual rights they may be, or to improper or irregular administration of a valid law by the officers of the state.

In the case of Williams v. Mississippi, 170 U. S. 213, 18 Sup. Ct. 583, 42 L. Ed. 1012, the court says, on page 219 of 170 U. S., page 585 of 18 Sup. Ct. (42 L. Ed. 1012), it has been held, in a very recent case, to justify a removal from a state court to a federal court of a cause in which such rights are alleged to be denied, that such denial must be the result of the Constitution or laws of the state, and not of the administration of them. The cases of Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567, Gibson v. Mississippi, 162 U. S. 565, 16 Sup. Ct. 904, 40 L. Ed. 1075, and Charley Smith v. Mississippi, 162 U. S. 592, 16 Sup. Ct. 900, 40 L. Ed. 1082, also illustrate the circumstances under which a removal of a cause is warranted by the provisions of section 641.

Does the New Jersey statute segregate a class of people, and impose upon them burdensome conditions of defense, or deny them defenses in a criminal prosecution not imposed upon or denied to

others similarly situated? If not, then it seems to us the provi-
sions of section 641 do not apply. The provisions of the statute
above quoted have existed in substantially the same form since
November 10, 1797, and during all that period have borne alike
upon all the citizens of the state. The act creates no distinction
between them. It does not say that persons of one sect, race,
or color shall have the right of challenge, while others, of a differ-
ent sect or color, shall not. The right of challenge is given to all,
the only condition imposed being that it shall be exercised before
the juror is sworn.

Counsel for the petitioners claims, however, that the act does
establish an illegal classification among the citizens of the state,
and asks:

"May one be denied the right, which others enjoy, to exclude disqualified
persons from the grand jury by which he is to be indicted, merely because the
matter for which he is indicted occurred after the grand jury was sworn?"

It is an all-sufficient answer to say, as has already been said,.
that there is no classification established by the act as counsel
suggests. The inability to challenge does not arise from the stat--
ute, but, if it did, and an equally effective remedy were still re-
served to him by the act, or by the courts in their interpretation
of the act, the petitioners would not be aggrieved.

The question as to a defendant's rights in the premises has been
before the state courts at different times, and in different forms..
It has been held in the trial courts that every citizen has a right
to attend at the impaneling of the grand jury, and make known to
the court his reasons, if any he has, why the grand jury, or any
member or members of it, should not be sworn. In such a case he
would appear as amicus curiæ, and, if he does not so appear, his sub-
sequent right of challenge is gone. Magie, J. (now chancellor), 3
N. J. Law J. 153. In People v. Jewett, 3 Wend. 314, 321, Chief
Justice Savage says:

"There are causes of challenge to grand jurors, and these may be urged by
those accused, whether in prison or out on recognizance; and it is even said
that a person wholly disinterested may, as amicus curiæ, suggest that a grand
juror is disqualified. But such objection, to be availing, must be made previous-
to the juror being impaneled and sworn. It has been urged upon us that the
defendant, not having been apprised of any intended proceeding against him,.
not having been arrested on a criminal charge, or required to enter into recog-
nizance to appear at the court where the bill of indictment was found, had not
an opportunity to make his challenge; that now is his earliest day in court;
and that he ought, therefore, to be permitted to avail himself of this defense.
Although the force of this appeal is felt, I cannot yield to it, and consent that,.
after an indictment found, the party charged may urge an objection of this-
kind in avoidance of the indictment. The books are silent on the subject of
such exception after indictment found, and, in the absence of authority, I am
inclined to say, in consideration of the inconvenience and delay which would
unavoidably ensue in the administration of criminal justice, was a challenge to-
a grand juror permitted to be made after he was sworn and impaneled, that
the objection comes too late. I am therefore of opinion that on neither of the-
grounds urged by the defendant ought this motion to be granted."

Marcy, J., concurred in the above opinion. These rulings may
not establish the law, but they show the tendency of the courts to
treat all fairly and alike under the statute.

In the case of State v. Rockafellow, 6 N. J. Law, 332, the Supreme Court held that a plea in abatement setting up that one of the grand jurors who found the bill of indictment under consideration in that case was not a freeholder, as required by the statute, was good. While in the case of State v. Rickey, 10 N. J. Law, 83, a plea in abatement to an indictment for embezzling money from a bank, which set up that one of the grand jurors was a stockholder in the bank, was held bad on demurrer, as was also a further plea in abatement to the same indictment, setting up that two of the grand jurors had, before they were sworn, expressed opinions prejudicial to the defendant. The same question was again before the court in the case of Gibbs and Stanton v. State, 45 N. J. Law, 379, 46 Am. Rep. 782. In this case the plea alleged malice and ill will on the part of the grand jurors who found the indictment, as well as misconduct on the part of the sheriff in selecting the grand jury. In an elaborate opinion by Beasley, C. J., he says:

"The remedies which the law afforded these defendants, situated as they were, were these: First, they had the right to challenge this grand jury, either as a whole or in part, on the grounds now stated in their pleas; or, second, if an opportunity for doing this was not afforded to them, by reason of their ignorance that they would be proceeded against, or that the objections to the proceedings in question existed, then their right was to apply to the court, in the exercise of its discretion, to quash the entire procedure against them. Nor, in abstract speculation, would an argument of any force arise from these premises that the remedies thus provided are so utterly insufficient and unreasonable that it must be presumed that a further remedy exists. For my part, I can see no force whatever in such a suggestion. In the first place, we are to remember that the right in question, and which, in some measure, the law should assuredly secure to the party, is not one that can be called an essential or fundamental right. It is not one necessary for the security of the person, life, or property. The requisite that an accusation of this nature shall proceed from a grand inquest is the provision which the law makes against frivolous or malicious public criminations. The safeguards to such provisions, as I have said, consist in the right to challenge the grand jury, and the right to move the court to set aside the proceedings. Are such safeguards unreasonably deficient? I am at a loss to see how any one can so consider. If a man is tried for his life and is convicted, and he then discovers that by the malice of the summoning officer the jury has been packed, and the trial has been a scheme to take his life, what remedy does the law give him in such extremity? Absolutely none but an application to the discretion of the court to set the proceedings aside, and yet it is argued that this same remedy is inadequate in its application to a similar proceeding on the part of a grand inquest. I must repeat that I cannot concede that a right to put in the plea in question belongs to the defendants ex debito justitiæ. If it be a right, it must be one inherent in the established modes of legal procedure. And this I regard as the real question to be disposed of on this branch of the case."

It will be seen from the foregoing extract that that eminent jurist believed that if a defendant did not have the right to challenge the grand jury before he was sworn, because of his ignorance that he was to be proceeded against, he might still apply to the court to quash the entire procedure against him. This case was subsequently affirmed upon the opinion of the chief justice by the court of Errors and Appeals in 46 N. J. Law, 353; and while what the chief justice said in reference to the right of the defendant to move to quash the indictment, under the circumstances mentioned, was in the nature of a dictum, it nevertheless is entitled to great weight.

In State v. Turner, 60 Atl. 1112, the Supreme Court, in denying a motion to quash an indictment, refers to the foregoing opinion of the chief justice, and distinguishes the case then under consideration by stating that it was noticeable that the chief justice was speaking of a cause of principal challenge proper affectum, but it does not in any way attempt to overrule or gainsay his opinion. In the case of State v. Hoffman, 70 N. J. Law, 629, 57 Atl. 263, affirmed by the Court of Errors and Appeals in 58 Atl. 1012, the chancellor, in delivering the opinion of the highest court, refers to that part of the opinion of Chief Justice Beasley above quoted, and says:

"The judgment in that case was affirmed in this court upon the opinion in, the Supreme Court. It does not appear that it was intended to approve the doctrine that ground for a challenge of a grand juror could be presented and considered on a motion to quash an indictment. The question was not argued in this case, and no opinion need be expressed thereon."

It should be also noticed that, while State v. Hoffman holds that an objection to a grand juror because he was over the statutory age cannot be allowed when made after he was sworn by a motion to quash the indictment upon proof of the fact, it nowhere appears in the case whether the defendant had or had not an opportunity to challenge the juror before he was sworn, although the strong inference is that he had, for, if otherwise, the fact would undoubtedly have been adverted to upon the argument, and necessarily passed upon by the court. On the other hand, in the case of Carter v. Texas, 177 U. S. 442, 20 Sup. Ct. 687, 44 L. Ed. 839, the court held that, when the defendant has had no opportunity to challenge the grand jury which found the indictment against him, the objection to the constitution of the grand jury upon this ground may be taken either by plea in abatement, or by motion to quash the indictment before pleading in bar. United States v. Gale, 109 U. S. 65, 3 Sup. Ct. 1, 27 L. Ed. 857, is to the same effect.

It is apparent, therefore, that there is a variance between the decisions of the state courts, so far as they have gone, and the decisions of the Supreme Court of the United States, as to the proper procedure to be taken by a defendant in a case like the one under consideration. It is also equally apparent that there is no absolutely controlling decision of the highest state court adverse to the petitioners, since the decisions in that court do not in any case certainly reveal the same conditions that are here presented. The petitioners have undoubtedly sought a remedy in some of the inferior state courts, and have been denied it, but it by no means appears that they would be remediless in the highest court; but, if they were, it does not follow that they would be thereby brought within the provisions of section 641 of the United States Statutes. It may be the state courts have misconceived the law. There may be errors in the conclusions they have reached. The question is one of interpretation of the law, rather than of any hardship or injustice in the law itself; and, if the state courts are wrong in their construction, the defendants are not without remedy, since they can have such errors reviewed by the Supreme Court of the United States. In the case of Gibbs & Stanton, supra, the highest state

court has indirectly, and by implication at least, held that a defendant has the right to submit the question of a proper constitution of a grand jury to the court after he was indicted, provided he had no opportunity to do so before the grand jury was sworn. In Gibson v. Mississippi, 162 U. S., at page 583, 16 Sup. Ct., at page 907 (40 L. Ed. 1075), Mr. Justice Harlan, in delivering the opinion of the court, says:

"If any right, privilege, or immunity of the accused, secured or guarantied by the Constitution or laws of the United States, has been denied by a refusal of the state court to set aside either that indictment or the panel of petit jurors, or by any erroneous rulings in the progress of the trial, his remedy would have been through the revisory power of the highest court of the state, and ultimately through that of this court."

And again, on page 585 of 162 U. S., page 908 of 16 Sup. Ct. (40 L. Ed. 1075):

"It is not every denial by a state enactment of rights secured by the Constitution or laws of the United States that is embraced by section 641 of the Revised Statute. The right of removal given by that section exists only in the special cases mentioned in it. Whether a particular statute, which does not discriminate against a class of citizens in respect of their civil rights, is applicable to a pending criminal prosecution in the state court, is a question in the first instance for the determination of that court; and its right and duty to finally determine such question cannot be interfered with by removing the prosecution from the state court, except in those cases which by express enactment of Congress may be removed for trial into the courts of the United States."

In Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544, 28 L. Ed. 542, the court, in speaking of the duties and obligations resting upon the state judges to guard, enforce, and protect every right secured by the Constitution and laws of the United States, said:

"If they fail therein, and withhold or deny rights, privileges, or immunities secured by the Constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the state in which the question could be decided to this court for final and conclusive determination."

To the same effect are Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567, and Strauder v. West Virginia, supra.

Under the authorities, therefore, we fail to see how the defendants have put themselves within the provisions of section 641. There is no injustice in the law itself. It is a provision which may be found in very many statutes pertaining to juries in the different states of the United States; and, since the grand juries are usually sworn at the beginning of a term of court, cases are bound to arise under these laws whenever and so often as crimes are committed during the term. If, under the provisions of section 641, such cases are removable to the federal courts, it is obvious that where, as in this state, grand juries are not infrequently held in session from the beginning until the end of the term, all indictments found by such grand juries, in case of the disqualification of a grand juror, would be removable to the federal courts. This, of course, affords no ground for denying the petitioners their rights, if rights they have in the premises, but it is a reason why their rights should be clearly manifested. We think the petitioners' ground of complaint, if any, is not against the law, but against its possible interpreta-

tion, with respect to which they have ample remedy, irrespective of a removal of the cause to the federal court. I think the case was improperly removed into this court, but if it were even a doubtful case, it would be the duty of the court to remand it. Groel v. United Electric Co. (C. C.) 132 Fed. 252, 265, and cases cited.

An order remanding the cause to the state court will be made.